[Cite as *State v. Montgomery*, 2019-Ohio-5178.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2019CA00012 |
| THEODIS MONTGOMERY | |
| Defendant-Appellant | O P I N IO N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Stark County Court of Common Pleas, Case No. 2018CR1205 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | December 9, 2019 |

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
Prosecuting Attorney
Stark County, Ohio

KRISTINE W. BEARD
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza South, Ste. #510
Canton, Ohio  44702-1413

For Defendant-Appellant

AARON KOVALCHIK
116 Cleveland Avenue, N.W.
808 Courtyard Centre
Canton, Ohio  44702

*Hoffman, P.J.*

**{¶1}** Appellant Theodis Montgomery appeals the judgment entered by the Stark County Common Pleas Court convicting him of kidnapping (R.C. 2905.01(A)(5) and/or (B)(2)) and rape (R.C. 2907.02(A)(2)) and sentencing him to ten years incarceration. Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** A.B. has known Appellant about ten years, as her father is married to A.B.'s sister. A.B. was engaged to Michael Strychalski, who was in prison. While Michael was in prison, A.B. and Appellant would hang out to smoke weed and watch Netflix. However, A.B. eventually realized Appellant was interested in a romantic relationship with her. She did not share his feelings and wanted to remain friends. Appellant gave A.B. money and weed and gave her rides to work in an attempt to win her affection. While she accepted his gifts, she maintained she did not want a romantic relationship with Appellant.

**{¶3}** In December of 2017, A.B.'s car broke down. Appellant volunteered to repair her car, and told her to leave the car behind Heggy's Ice Cream in Canton. While he was repairing the car, A.B. learned Appellant had created a fake Facebook page in Strychalski's name, inferring on the page she had engaged in a sexual relationship with Appellant. She confronted Appellant in anger, and Appellant left without finishing the car repairs. A.B. broke off contact with Appellant after this incident.

**{¶4}** On March 15, 2018, A.B. was working at Ameridial. Her father called her around 11:00 p.m., asking her to bring him marijuana. Her father and his family were flying to Florida the next morning for vacation. She went to her father's house and smoked weed with him until around 1:00 a.m. Because of the late hour, A.B. decided to spend the night. She made a bed on the floor and went to sleep.

**{¶5}** A.B. woke up around 4:00 a.m. when her father told her they were getting ready to leave for the airport. Appellant, who was living at the house, stayed behind. Around 7:00 or 8:00 a.m., she awakened again when she received a call from Strychalski. She fell asleep while on the phone. She was later awakened by Appellant who yelled, "What the F are you here for, why are you here?" Tr. 365. When A.B. tried to get up, Appellant punched her in the face.

**{¶6}** Appellant grabbed A.B. by the hands and sat her down on the couch. When A.B. asked to use the bathroom, Appellant walked her to the bathroom and blocked the doorway. A.B. wiped her bloody nose, with a tissue, and threw it in the bathroom trash can. Appellant forced her to the basement, threw a package of zip ties on a table, and asked her to pick her punishment.

**{¶7}** Appellant forced A.B. to clean out the dog's kennel. He then grabbed her by the loop in the back of her pants and took her back upstairs to the bathroom. He ordered her to get in the shower. She initially refused, then took her clothes off and got in the shower. Appellant got in the shower with her, and forced her to engage in vaginal intercourse. A.B. was crying, but gave up on fighting Appellant.

**{¶8}** Appellant carried A.B. to the couch, where he got on top of her and forcibly engaged in vaginal intercourse with her a second time. She asked Appellant to stop, and he stopped. Appellant gave her a towel and apologized. He cooked some food which he tried to share with her, and washed her clothes.

**{¶9}** Appellant agreed to let A.B. go. He walked her to her car. She called her sister and drove to her sister's house. She also called her boyfriend in jail, and the call

was recorded.  A.B. was crying and upset in the phone call.  Her sister urged her to call the police.

{¶10}  A.B. called 911.  The dispatcher advised her to go to the hospital.  At Mercy Medical Center she was given a sexual assault examination and interviewed by police.  A.B. had a broken blood vessel in her eye, pain across her nose, a cut on her lip, and a painful tooth.  Photographs of her injuries were taken at the hospital.  A.B. was upset and crying while talking to the nurse and to police at the hospital.

{¶11}  Detective Joseph Mongold from the Canton Police Department received verbal consent over the telephone from A.B.'s father to search portions of his house.  Det. Mongold recovered a bloody tissue from the bathroom trash can.  DNA testing revealed DNA from the semen collected from A.B.'s vaginal swabs was consistent with Appellant's DNA by 1 in one trillion.

{¶12}  Appellant was indicted by the Stark County Grand Jury with one count of kidnapping and one count of rape.  Both counts included repeat violent offender specifications.  The case proceeded to jury trial in the Stark County Common Pleas Court.

{¶13}  Prior to commencement of trial, the State moved to permit the victim, A.B., to be designated the State's representative and sit at counsel table throughout the trial.  The court granted the State's motion.

{¶14}  Appellant's position at trial was he engaged in consensual sex with A.B.  Appellant did not testify at trial, but presented the testimony of several family members and a friend, who testified Appellant and A.B. had been involved in a sexual relationship, and she did not appear to have physical injuries following the claimed assault.

**{¶15}** The jury found Appellant guilty of kidnapping and rape, but acquitted Appellant on the sexual motivation specification accompanying the kidnapping charge. The court found Appellant guilty of the repeat violent offender specification. The court sentenced Appellant to ten years incarceration on each count, to be served concurrently, for an aggregate term of ten years.

**{¶16}** It is from the December 21, 2018 judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:

I. APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATE CONSTITUTION WHEN THE TRIAL COURT ALLOWED THE ALLEGED VICTIM TO REMAIN IN THE COURTROOM AS THE STATE'S DESIGNATED REPRESENTATIVE.

II. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

III. APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE, I, SECTIONS 10 AND 16 OF THE OHIO CONSITUTION [SIC] BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE.

I.

**{¶17}** Appellant argues his right to a fair trial was denied because the victim was permitted to be in the courtroom as the State's designated representative throughout the trial.

**{¶18}** Evid. R. 615 provides in pertinent part:

(A) Except as provided in division (B) of this rule, at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. An order directing the "exclusion" or "separation" of witnesses or the like, in general terms without specification of other or additional limitations, is effective only to require the exclusion of witnesses from the hearing during the testimony of other witnesses.

(B) This rule does not authorize exclusion of any of the following persons from the hearing:

(4) in a criminal proceeding, an alleged victim of the charged offense to the extent that the alleged victim's presence is authorized by statute enacted by the General Assembly or by the Ohio Constitution. As used in this rule, "victim" has the same meaning as in the provisions of the Ohio Constitution providing rights for victims of crimes.

**{¶19}** Ohio Constitution, Article I, Section 10a, also known as "Marsy's Law," provides in pertinent part:

(A) To secure for victims justice and due process throughout the criminal and juvenile justice systems, a victim shall have the following rights, which shall be protected in a manner no less vigorous than the rights afforded to the accused:

(1) to be treated with fairness and respect for the victim's safety, dignity and privacy;

(2) upon request, to reasonable and timely notice of all public proceedings involving the criminal offense or delinquent act against the victim, and to be present at all such proceedings[.]

{¶20} In furtherance of this constitutional provision, R.C. 2930.09 provides for the victim's presence in the court room at any stage of the proceeding:

A victim in a case may be present whenever the defendant or alleged juvenile offender in the case is present during any stage of the case against the defendant or alleged juvenile offender that is conducted on the record, other than a grand jury proceeding, unless the court determines that exclusion of the victim is necessary to protect the defendant's or alleged juvenile offender's right to a fair trial or to a fair delinquency proceeding. At any stage of the case at which the victim is present, the court, at the victim's request, shall permit the victim to be accompanied by an individual to provide support to the victim unless the court determines that exclusion of

the individual is necessary to protect the defendant's or alleged juvenile offender's right to a fair trial or to a fair delinquency proceeding.

**{¶21}** A decision to allow a victim to remain in the courtroom during a trial is left to the discretion of the trial court. *State v. Klusty*, 5th Dist. Delaware No. 14 CAA 07 0040, 2015-Ohio-2843, ¶ 32. The burden is on the defendant to show the presence of the alleged victim compromised the defendant's right to a fair trial*. State v. Ricco*, 11th Dist. Lake No. 2008-L-169, 2009-Ohio-5894, ¶ 27.

**{¶22}** In *State v. Maley,* 1st Dist. Hamilton No. C-120599, 2013-Ohio-3452, the appellant made a generalized claim he was prejudiced by the victim's presence in the courtroom. In finding a vague assertion of prejudice was insufficient to require reversal of his conviction, the First District Court of Appeals held:

> Maley's argument below, and the argument made here, are nothing more than general assertions that having the victim present and able to hear testimony allowed for the possibility of an unfair trial. If this court were to hold that such an argument is sufficient to prevent the victim from attending court proceedings, it would render the statute meaningless. We hold that for a defendant to show that a victim's presence would result in an unfair trial, she must present particularized evidence that the victim's testimony will be so affected by the victim's presence during the testimony of other witnesses that her right to a fair trial would be violated. General assertions that it is possible are insufficient.

**{¶23}** *Id.* at ¶ 7.

**{¶24}** In the instant case, Appellant makes a vague, generalized assertion of prejudice. A.B. was the first witness to testify, and therefore Appellant has not demonstrated prejudice in her ability to hear the testimony of the other witnesses. We find the victim's presence is permitted by both the Ohio Constitution and by statute. The trial court did not err in allowing the victim to sit at counsel table with the prosecutor throughout the trial as the State's representative.

**{¶25}** The first assignment of error is overruled.

II.

**{¶26}** In his second assignment of error, Appellant argues the judgment is against the manifest weight and sufficiency of the evidence.

**{¶27}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶28}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶29}** Appellant was convicted of kidnapping in violation of R.C. 2905.01(A)(4) and/or (B)(2):

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]

(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:

(2) Restrain another of the other person's liberty.

**{¶30}** He was also convicted of rape in violation of R.C. 2907.02(A)(2), which provides, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

**{¶31}** On March 15, 2018, A.B. testified she was working at Ameridial. Her father called her around 11:00 p.m., asking her to bring him marijuana. Her father and his family were flying to Florida the next morning for vacation. She went to her father's house and

smoked weed with him until around 1:00 a.m.  Because of the late hour, A.B. decided to spend the night. She made a bed on the floor and went to sleep.

{¶32}  A.B. testified she woke up around 4:00 a.m. when her father told her they were getting ready to leave for the airport.  Appellant, who was living at the house, stayed behind.  Around 7:00 or 8:00 a.m., she awakened again when she received a call from Strychalski.  She fell asleep while on the phone.  She was later awakened by Appellant who yelled, "What the F are you here for, why are you here?"  Tr. 365.  When A.B. tried to get up, Appellant punched her in the face.

{¶33}  A.B. testified Appellant grabbed her by the hands and sat her down on the couch.  When A.B. asked to use the bathroom, Appellant walked her to the bathroom and blocked the doorway.  A.B. wiped her nose, which was bleeding, with a tissue, and threw it in the bathroom trash can.  Appellant forced her to the basement, threw a package of zip ties on a table, and asked her to pick her punishment.

{¶34}  A.B. testified while in the basement, Appellant forced her to clean out the dog's kennel.  He then grabbed her by the loop in the back of her pants and took her back upstairs to the bathroom.  He ordered her to get in the shower.  She initially refused, then took her clothes off and got in the shower.  Appellant got in the shower with her, and forced her to engage in vaginal intercourse.  A.B. was crying, but gave up on fighting Appellant.

{¶35}  A.B. further testified Appellant carried her to the couch, where he got on top of her and forcibly engaged in vaginal intercourse with her a second time.  She asked Appellant to stop, and he stopped.  Appellant gave her a towel and apologized.  He cooked some food which he tried to share with her, and washed her clothes.

{¶36} A.B. testified Appellant agreed to let her go. He walked her to her car. She called her sister and drove to her sister's house. She also called her boyfriend, and the call was recorded and played for the jury. A.B. was crying and upset in the phone call. Her sister urged her to call the police.

{¶37} A.B. called 911. The dispatcher advised her to go to the hospital. At Mercy Medical Center she was given a sexual assault examination and interviewed by police. The nurse at the hospital testified A.B. had a broken blood vessel in her eye, pain across her nose, a cut on her lip, and a painful tooth. The nurse further testified A.B. was upset and crying during the examination. Photographs of her injuries were taken at the hospital and admitted into evidence.

{¶38} A.B.'s testimony, if believed the jury, was sufficient to convict Appellant of kidnapping and rape. We find the judgment of conviction is supported by sufficient evidence.

{¶39} Appellant argues A.B.'s testimony is not credible because she was angry at him and therefore motivated to make false accusations against him, she did not initially tell her father she had been raped, she left out details when interviewed by police. He presented evidence A.B. and the victim had a sexual relationship. He also presented evidence there was no trail of blood in the house and his witnesses did not see physical evidence she had been struck by Appellant as she claimed at trial.

{¶40} The jury heard both the victim's testimony and the testimony of Appellant's witnesses and chose to believe the testimony of the victim. The mere fact she may have previously been involved in a consensual sexual relationship with Appellant does not mean she consented to sex with Appellant on the day in question.

**{¶41}** Further, A.B.'s sister, who testified for Appellant, confirmed A.B. called her within minutes after the incident, and A.B. was crying and hysterical. She testified A.B. told her she had been raped. The nurse at Mercy Medical center testified A.B.'s physical injuries to her face were consistent with her account of the incident. Further, police found a tissue with blood on it in the bathroom trash can, which corroborated A.B.'s account of the events.

**{¶42}** We find the jury did not lose its way in believing the testimony of the victim in the instant case, and the verdict is not against the manifest weight of the evidence.

**{¶43}** The second assignment of error is overruled.

III.

**{¶44}** In his third assignment of error, Appellant argues his trial counsel was ineffective in failing to review the evidence provided by the State in discovery, and creating a hostile environment which negatively impacted the jury's decision.

**{¶45}** A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

**{¶46}** Appellant first argues counsel was ineffective in failing to review all materials provided by the State in discovery. During discussion concerning clothing taken from the victim at the hospital, the following exchange occurred:

MR. LAGER: Correct me if I'm wrong, and I may be, but was this evidence disclosed in discovery?

MR. BICKIS: Yes.

MR. LAGER: How?

MR. BICKIS: You were given the SANE report which indicates that the clothing was collected by the SANE nurse.

MR. LAGER: By the what?

MR. BICKIS: SANE nurse. And you didn't come over and view any evidence. You were notified there was evidence available.

**{¶47}** Tr. 611.

**{¶48}** Appellant has not demonstrated prejudice from counsel's failure to inspect the clothing collected by the SANE nurse. Appellant did not dispute having sex with the victim, but rather argued the sex was consensual. The clothing collected at the hospital was not pertinent to his defense, and we find Appellant has not demonstrated the result of the trial would have been different had counsel inspected the clothing prior to trial.

**{¶49}** Appellant also argues counsel created a hostile environment by his conduct at trial, directing this court to pages 716-730 of the transcript. During a conversation

outside the presence of the jury regarding the admissibility of the victim's clothing, the court admonished Appellant:

THE COURT: Yeah. I understand that you may choose your words the way that you want to choose them, Mr. Lager, but you, you keep selecting words like "incompetent" and "overzealous" and things that are very personal attacks, and I just feel compelled to explain to you that I am really trying to maintain the decorum here, and those types of words in the, the relationships or the interactions between counsel do not assist the Court in that respect. I'm not asking for a response, I'm just making a statement.

**{¶50}** Tr. 718.

**{¶51}** When Appellant took issue with the court's admonishment, she continued:

THE COURT: Okay. And you know what, you are, you are absolutely entitled to take affront to it. However, my comments are based on the continuation of your behavior throughout this case, including the motions which you filed leading up to this case which prompted a conversation that I had to have with you and the prosecutor in my chambers, my extension of my chambers, in pretrial discussions, all right?

\*\*\*

I didn't intend to have a long discussion about it, I didn't intend to incur any ire from you, I am just pointing it out because I'm anticipating that

we are going to get to closing argument at some point today and I do not want this to sort of devolve into something that is a personal attack, all right?

**{¶52}** Tr. 719-720.

**{¶53}** While the record demonstrates the trial court instructed Appellant to be more careful about his choice of words during the trial, the record does not reveal counsel made comments in front of the jury which were so inflammatory as to affect the outcome of the proceedings. The portion of the record Appellant cites in support of his claim of ineffective assistance occurred outside the presence of the jury, and we find after review of the transcript of the proceedings, Appellant has not demonstrated but for counsel's behavior, the result of the proceedings would have been different.

**{¶54}** The third assignment of error is overruled.

**{¶55}** The judgment of the Stark County Common Pleas Court is affirmed.

By: Hoffman, P.J.
Wise, John, J. and
Delaney, J. concur